Wilde, J.,
delivered the opinion of the Court.
The general question in this case is, whether the proceedings under the plaintiff’s execution were regular, so as to give him a legal title to the rent. It is understood that sundry other rents, due from other tenants of the church on similar leases, were taken at the same time. But at present the only question is as to the rent claimed of the defendant.
By the statute of 1783, c. 57, lands are made liable to be attached and taken on execution, which are to be appraised and set off to the creditor; thereby giving him all the estate that the debtor had therein. This mode of extending executions is unknown to the common law, and was first provided for by a provincial ( * 440 ] act, nearly similar *to the statute of 1783(1). This remedy was a beneficial one for the creditor, and not injurious to the debtor; particularly in regard to uncultivated lands, the occupation of which, without the fee, could be of little or no use to the creditor.
It has always been the wise policy of government, in this state, to facilitate the alienation of lands, and to encourage their cultiva tian. The provision made for the transfer of the fee, by levy of execution, came within the scope of this policy.
This mode of extending execution is required by the statute in all cases, excepting when the estate extended upon cannot be set out by metes and bounds. Then, by the third section of the statute, the rents may be taken. It has not been contended, on the part of the plaintiff, that his case comes within this exception. Such a position could not be maintained by any reasonable construction of the statute. No one, I presume, would suppose that a lease for a short term could prevent the creditor from taking the fee. But the principle is the same, whether the lease be for a long or a short term. In all such cases the fee may be taken, and the rent will pass as incident to the reversion. Thus the creditor obtains all the estate of the debtor.
It has not been suggested that the reversion of. the defendant’s lot was of greater value than the plaintiff’s judgment. But if such had been the fact, it would have been no obstacle; for a part might have been taken, and the rent would be apportioned. If a moiety *357 of a reversion be extended by elegit, the rent shall be apportioned. [Bac. Air. Rent. M. 2.—Roll. Air. 237.—3 Cruise’s Big. 357.] Also on a grant by the lessor of a part of the reversion, or any alienation of a part thereof by the act of law, the rent will be distributed accordingly. [4 Bac. Air. 370.] Our execution, when extended on real estate, may be considered either as effecting an alienation by act of law, or as a conveyance by the debtor; and in either case the rent may be apportioned.
*If, then, the levy in question cannot be supported by [ * 441 ] the statute, it remains only to be considered, whether it is warranted by the common law, or by any English statute adopted here.
It has been argued, that rent is real estate, and not personal; being an incorporeal hereditament; and that it may be taken here, as in England, on elegit. There is no doubt that, in England, a creditor may be tenant by elegit of a rent; but the rent is not separated from the reversion. By this writ of execution, the creditor must take a moiety of the debtor’s lands, rents, reversions, hereditaments, &c. By extending execution on the reversion, the rent passes as incident. It is therefore unnecessary to take the rent directly; and to take it separate from the reversion would be considered irregular. [Cro. Eliz. 656.—2 Cruise’s Big. 71.] In this particular, therefore (and others might be added, if necessary), the plaintiff did not proceed in the manner required, by elegit.
But we have no knowledge, nor any reason to suppose that the statute, on which this writ is founded, was ever adopted here. If it had been, I should think it was repealed by the statute of 1783, which makes the whole debtor’s real estate liable to be taken on execution, instead of the moiety, which was to be taken by elegit. The language of the statute is imperative, and directs the mode of proceeding by the officer, in all cases, whenever the creditor “ shall think proper to levy his execution upon the debtor’s real estate.” The plaintiff did think proper so to do with his execution against the church; and therefore the officer’s proceedings should have conformed to the provisions of the statute.
As to the common law writ of levari facias, it does not authorize the sheriff to meddle with the debtor’s lands, or to transfer to the creditor a title to the rents or profits; but he is to collect the debt out of the profits of the land, or out of the rents payable to the debtor. [2 Bac. Air. Execution, C. 4.—Finch. 101, 471.—Plowd. 441.] This * remedy must be attended [*442] with many inconveniences; and Blackstone says, little use had been made of it in England, after the remedy by elegit was given by the statute of Westm. 2, 13 Edw. I, c. 18. In this state, I apprehend, it has never been used. But whether this be so or *358 not, it is certain that the writ of execution against the church was not a levari facias; and if it had been, it would have given the plaintiff no title to the rent in question.
For these reasons, the opinion of the Court is, that the plaintiff's title is not valid in law; and according to the agreement of the parties, by which the cause was submitted, he must be called.

Plaintiff nonsuit.

 Vide Perp. Laws, vol. 1, page 996.